UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                           )
LAWRENCE WRIGHT,                          )
                                                           )
                    Plaintiff,                       )
                                                           )
         v.                                              )   Civil Action No. 12-1695 (RBW)
                                                           )
WASTE MANAGEMENT OF            )
MARYLAND, INC.,                             )
                                                           )
                    Defendant.                    )
_____)

**MEMORANDUM OPINION**

The plaintiff, Lawrence Wright, brings this action against his former employer, Waste Management of Maryland, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2012), alleging discrimination based on his race. Complaint for Discrimination ("Compl.") ¶¶ 1, 14–17. Specifically, the plaintiff challenges the defendant's decision to terminate his employment as a dump-truck driver. Id. Currently before the Court is the Defendant's Motion for Summary Judgment ("Def.'s Mot."). After carefully considering the parties' submissions,[1] the Court concludes that it must grant the defendant's motion.

**I. BACKGROUND**

The plaintiff, who is African-American, Compl. ¶ 4, began his employment with the defendant in 2007 as a dump-truck driver at its facility in Temple Hills, Maryland, id. ¶ 6; Pl.'s Facts ¶ 21. In February 2009, the defendant closed the Temple Hills facility and transferred the

---

[1] In addition to the documents previously referenced, the Court considered the following filings in reaching its decision: (1) the Defendant's [] Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"); (3) the plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the plaintiff's Statement of Material Facts in Dispute ("Pl.'s Facts"); and (5) the defendant's Reply Memorandum in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply").

plaintiff, along with "about thirty-four other employees," to a facility in Gaithersburg, Maryland. Pl.'s Facts ¶ 22.[2] According to the plaintiff, "[a]ll but nine of the employees transferred from Temple Hills to the Gaithersburg facility were African-American," id. ¶ 23, and "[a]s a result of the transfer, the number of African-Americans significantly increased at the Gaithersburg facility," id. ¶ 24.

Troy Mills, an African-American, Def.'s Facts ¶ 4; Pl.'s Facts ¶ 26, was one of four route supervisors at the Gaithersburg facility and acted as the plaintiff's manager, Def.'s Facts ¶ 4; Pl.'s Facts ¶ 25, but did not have the authority to fire the plaintiff, Pl.'s Facts ¶ 25; Def.'s Reply at 2. Rather, it was Mr. Mills's supervisor, Daryl Smith, who "had the authority to hire, fire[,] or impose suspensions on personnel." Pl.'s Facts ¶ 25. Mr. Smith is Caucasian. Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5.

When the plaintiff began working at the Gaithersburg facility, the defendant had in effect the Attendance and Punctuality Policy of Waste Management of Maryland, Inc. ("Policy"), which was applicable to the plaintiff until June 1, 2009. Def.'s Facts ¶ 8; Pl.'s Facts ¶ 8. The defendant revised the Policy in 2009, and implemented the Amended Attendance and Punctuality Policy of Waste Management of Maryland, Inc. ("Amended Policy"), which was applicable to the plaintiff from June 1, 2009, to the date of his termination. Def.'s Facts ¶¶ 8-9; Pl.'s Facts ¶¶ 8-9. Both policies utilized a point system that assessed one "occurrence" for each absence from work on a Tuesday, Wednesday, or Thursday; two occurrences for each absence on a Friday, Saturday, Sunday, Monday, or holiday; one occurrence for being tardy for a shift by one hour or more; and one half of an occurrence for being tardy for a shift by less than one hour. Def.'s

---

[2] The plaintiff has incorporated his Statement of Material Facts in Dispute into his Opposition. See Pl.'s Opp'n at 1-8. For ease of reference, the Court will refer to the plaintiff's Statement of Material Facts in Dispute by paragraph number, and the argument of the plaintiff's Opposition by page number.

Mot., Exhibit ("Ex.") 1 (Declaration of Liz Bieler ("Bieler Decl.")), Ex. 4 (Policy) at 24;[3] id., Ex. 5 (Amended Policy) at 25.  The Policy called for an employee's termination upon accumulating seven occurrences, id., Ex. 4 (Policy) at 25, while the Amended Policy called for termination upon accumulating eight occurrences, id., Ex. 5 (Amended Policy) at 25.  Both the Policy and the Amended Policy generally "are no fault policies . . . [and] employees are given occurrences whether the missed date was excusable or not," but do allow for certain excused absences, including leave protected under the Family Medical Leave Act ("FMLA").  Def.'s Facts ¶ 10; Pl.'s Facts ¶ 10; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 4 (Policy) at 25; id., Ex. 5 (Amended Policy) at 25.

On February 16, 2009, the plaintiff called Mr. Mills and informed him that he would be absent from work on that day.  Def.'s Facts ¶ 11; Pl.'s Opp'n, Ex. A (Declaration of Lawrence Wright) ¶ 4.  The plaintiff was also absent from work on March 7, 2009, and March 9, 2009.  Def.'s Facts ¶ 12; Pl.'s Facts ¶ 31.  On March 10, 2009, the plaintiff was issued two occurrences for each of these three absences, for a total of six accumulated occurrences.  Def.'s Facts ¶ 12; Pl.'s Facts ¶¶ 32-33.  On May 2, 2009, the plaintiff was again absent from work.  Def.'s Facts ¶ 13; Pl.'s Facts ¶ 35.  On May 5, 2009, the plaintiff provided the defendant with documentation showing that his grandson was in the hospital during his March 2009 absences.  Def.'s Facts ¶ 12; Pl.'s Facts ¶ 38.  After receiving the documentation, Mr. Smith consulted with Marshelle Hightower, an African-American and the Human Resources Manager for the defendant, Def.'s Reply at 2, who advised Mr. Smith to "tak[e] the occurrences related to the absence on [March 7, 2009] off," Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 10 (May 4, 2009-May 8, 2009 E-mail Correspondence).  On May 9, 2009, the defendant issued the plaintiff two occurrences for the

---

[3] The Declarations of Liz Bieler (ECF No. 10-1), Troy Mills (ECF No. 10-2), and Daryl Smith (ECF No. 10-3) all utilize the same exhibits and exhibit numbering system.  For ease of reference, the Court will refer to the Bieler Declaration when citing to these exhibits.

plaintiff's absence on May 2, 2009, and formally rescinded the two occurrences that the plaintiff received for his absence on March 7, 2009.  Def.'s Facts ¶¶ 13-14; Pl.'s Facts ¶ 40; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 9 (Employee Disciplinary Report for May 2, 2009 Incident).

On June 6, 2009, the plaintiff was eleven minutes late for work, for which he received half of an occurrence.  Def.'s Facts ¶ 15; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 11 (June 1, 2009-June 20, 2009 Time Detail).  On June 15, 2009, he was over two hours late for work, for which he received one occurrence.  Def.'s Facts ¶ 15; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 11 (June 1, 2009-June 20, 2009 Time Detail).  The plaintiff was not formally notified of these occurrence assessments, Pl.'s Facts ¶ 47, but as noted by the defendant, the Amended Policy "provides that warnings be issued to employees only for the second, fourth, sixth, and eighth occurrences," Def.'s Reply at 5; Def.'s Mot, Ex. 1 (Bieler Decl.), Ex. 5 (Amended Policy) at 25.

On July 18, 2009, the plaintiff was scheduled to work a shift that he "knew would take about 5.5 hours."  Pl.'s Facts ¶ 43.  According to the plaintiff, United States Department of Transportation regulations do not permit commercial drivers to operate vehicles for more than 57.5 hours per week, and the plaintiff had already worked 52.5 hours that week.  Pl.'s Facts ¶ 41.  The plaintiff further asserts that he had previously "protested that he had over [fifty-two] hours under [the Department of Transportation] regulations and should not be scheduled to work . . . [but] Mr. Mills did not change the schedule."  Id. ¶ 43.  Fifteen minutes after his start time on July 18, 2009, the plaintiff called the defendant's office and spoke to Brenda Garcia, the defendant's route manager on duty, and informed her that he had a flat tire.  Id. ¶ 44.  The plaintiff claims that Ms. Garcia "instructed him not to come in for the shift, but to come in at 9:00 a.m. the next Monday."  Id.  The plaintiff received one occurrence for this absence.  Def.'s Facts ¶ 16.

On or about July 21, 2009, Mr. Smith terminated the plaintiff's employment. Def.'s Facts ¶ 1; Pl.'s Facts ¶ 46. Ms. Hightower and Mr. Mills also joined in the decision to terminate the plaintiff's employment. Def.'s Mot, Ex. 1 (Bieler Decl.) ¶ 10; Def.'s Mot., Ex. 2 (Declaration of Troy Mills ("Mills Decl.")) ¶ 10; Def.'s Mot., Ex. 3 (Declaration of Daryl Smith ("Smith Decl.")) ¶ 10; Def.'s Reply at 2; Def.'s Mot., Ex. 5 (Deposition of Troy Mills ("Mills Depo.")) at 164:15-165:13. The plaintiff subsequently commenced this suit, alleging discrimination based on his race, Compl. ¶¶ 1, 15, 17, and the defendant has now moved for summary judgment, Def.'s Mot. at 1.

## II. STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on

5

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.  ANALYSIS

In the absence of direct evidence of discrimination, as is the situation here, claims of employment discrimination under Title VII are analyzed under the three-part framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, by providing proof of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." Swierkeiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (citations omitted). If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. Once the employer offers a legitimate, nondiscriminatory justification for its action, "the McDonnell

Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination vel non." Jackson, 496 F.3d at 707 (citation and internal quotation marks omitted). After the employer makes such a showing, "the plaintiff must prove that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives." Id. (citations omitted).

Notwithstanding the foregoing, if the defendant "has asserted a legitimate, non-discriminatory reason" for the adverse employment action in a motion for summary judgment, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Rather, the Court should evaluate only whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (citation omitted). If the plaintiff fails to present such evidence, summary judgment must be granted for the employer. Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997).

### A. The Defendant's Stated Reason for Termination

The defendant maintains that it terminated the plaintiff because he "did not show up to work and was tardy in excess of the allowance" under the defendant's attendance and punctuality procedures. Def.'s Mem. at 7. According to the defendant's Amended Policy, employees are terminated after accumulating eight occurrences, Def.'s Facts ¶¶ 10, 14, 16; Def.'s Reply at 3; Def.'s Mot, Ex. 1 (Bieler Decl.), Ex. 5 (Amended Policy) at 25, and the defendant claims that it issued the plaintiff more than eight occurrences prior to his termination, Def.'s Facts ¶ 16. The

record contains adequate documentation to support the defendant's decision to issue each occurrence. See Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 7 (Employee Disciplinary Report for February 16, 2009 Incident) (noting that the plaintiff was absent from work on February 16, 2009); id., Ex. 8 (Employee Disciplinary Report for March 9, 2009 Incident) (noting that the plaintiff was absent from work); id., Ex. 9 (Employee Disciplinary Report for May 2, 2009 Incident) (noting that the plaintiff was absent from work on May 2, 2009); id., Ex. 11 (June 1, 2009-June 20, 2009 Time Detail) (noting that the plaintiff was late for work on June 6, 2009 and June 15, 2009); id., Ex. 12 (Employee Disciplinary Report for July 18, 2009 Incident) (noting that the plaintiff was absent from work on July 18, 2009). And as other members of this Court have consistently held, an employee's "fail[ure] to meet the attendance and punctuality requirements of [the] job" constitutes a legitimate, nondiscriminatory reason for termination. Williams v. Verizon Wash., D.C., Inc., 266 F. Supp. 2d 107, 121 (D.D.C. 2003); see also Clarke v. Wash. Metro. Area Transit Auth., 904 F. Supp. 2d 11, 16 (D.D.C. 2012) (employee's persistent tardiness is a legitimate, nondiscriminatory reason for termination). The Court therefore concludes that the defendant has articulated a legitimate, nondiscriminatory reason for the plaintiff's termination.

### B. The Plaintiff's Allegations of Pretext

The defendant having presented evidence that establishes a legitimate, nondiscriminatory reason for the plaintiff's termination, the Court must determine whether the plaintiff "has produced enough evidence to convince a jury that [the defendant]'s stated reason for firing [him] . . . is a mere pretext for what was actually race discrimination." Wheeler v. Georgetown Univ. Hosp., ___ F. Supp. 2d ___, ___, 2014 WL 2919014, at *5 (D.D.C. 2014). Typically, plaintiffs rely on one of two types of evidence to establish pretext: (1) "the employee may attempt to

demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision," or (2) "the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances." See Brady, 520 F.3d at 495 (citations omitted); see also Wheeler, 2014 WL 2919014, at *6 ("Plaintiffs typically take one of two approaches in attempting to undermine an employer's stated reason for their termination." (citations omitted)). Conclusory allegations of discriminatory animus lacking any factual basis in the record are insufficient to defeat summary judgment. See Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) (concluding that the district court properly disregarded the plaintiff's "evidence of religious animus" because it "consisted merely of conclusory allegations in his own affidavit" (citation omitted)).

**1. Allegations of Fabrication**

The plaintiff first questions the legitimacy of several of the occurrences he received for his absences during 2009. While the plaintiff concedes that he was absent from work on February 16, 2009, he argues that he should not have received two occurrences because he "called Troy Mill[s]'s company cell phone and advised him that he would be absent from work" on that day. Pl.'s Facts ¶ 30; Pl.'s Opp'n at 12. Similarly, the plaintiff argues that he should not have received two occurrences for his absence from work on Saturday, July 18, 2009, because he had already accumulated too many hours that week and "should not [have been] scheduled to work." Pl.'s Facts ¶ 41-43; Pl.'s Opp'n at 12. Furthermore, he claims that on July 18, 2009, he "called and spoke to Brenda Garcia, the route manager on duty, and told her he had a flat tire." Pl.'s Facts ¶ 44. The defendant asserts that it properly issued two occurrences for each of these absences according to the terms of its Policy and Amended Policy. Def.'s Facts ¶¶ 11, 16.

9

The plaintiff does not dispute his absenteeism, see Def.'s Mot., Ex. 4 (Wright Depo.) at 61:5-9 (plaintiff testifying that he was absent from work on these days), and the issuance of these occurrences comports with the defendant's attendance policies, Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 4 (Policy) at 24 (providing for the issuance of two occurrences for any shift that is missed on a Friday, Saturday, Sunday, or Monday); id., Ex. 5 (Amended Policy) at 25 (same). "If an employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the facts." Brady, 520 F.3d at 495 (citing George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005)). Thus, a Court will "not second-guess an employer's personnel decision absent demonstrably discriminatory motive." Fischbach v. D.C. Dept. of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation and internal quotation marks omitted). Moreover, even if the defendant's application of its attendance policies was mistaken or flawed in some way, "[a]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." George, 407 F.3d at 415; see also Fischbach, 86 F.3d at 1183 (citations and internal quotation marks omitted) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason.").

The plaintiff has failed to articulate any reason for this Court to find that the defendant's issuances of the occurrences for the absences on February 16, 2009, and July 18, 2009, were based on phony reasoning or were in any way connected with his race. Accordingly, the plaintiff's allegations that these occurrences demonstrate pretext are meritless. See, e.g., Chambliss v. Nat'l R.R. Passenger Corp., No. 05-2490 (CKK), 2007 WL 581900, at *21 (D.D.C. Feb. 20, 2007) (plaintiff failed to establish pretext where his "own descriptions of incidents [of

...

disciplinary action for tardiness and absenteeism] fail to show that these incidents were in any way connected to [the] [p]laintiff's race").

With respect to the occurrences issued for his two instances of tardiness in June 2009, the plaintiff contends that the "defendant's persistent prevarication . . . raises substantial issues about [the] credibility of [the] defendant's justification for [the plaintiff]'s termination."  Pl.'s Opp'n at 14.  Yet, the defendant has submitted ample evidence to establish that the plaintiff was, in fact, tardy on June 6, 2009, and June 15, 2009, see Def.'s Mot., Ex. 1 (Bieler Decl.) ¶ 8; Id., Ex. 11 (Time Detail) at 24 (noting the exact times that the plaintiff arrived to work on the days in question); Def.'s Mot., Ex. 2 (Mills Decl.) ¶ 8; Def.'s Mot., Ex. 3 (Smith Decl.) ¶ 8; Def.'s Mot., Ex. 5, (Deposition of Troy Mills ("Mills Depo.")) at 127-132; Def.'s Facts ¶ 15, and the plaintiff neither disputes these claims nor offers any affidavits or other evidence to find to the contrary.[4] In accordance with its Amended Policy, the defendant asserts that it issued one half of an occurrence for the tardiness on June 6, 2009, and one occurrence for the tardiness on June 15, 2009.  See Def.'s Mot., Ex. 1 (Bieler Decl.) ¶ 8.

To support his claim that the June 2009 occurrences were fabricated, the plaintiff alleges that the defendant did not produce "any written record contemporaneous with [the plaintiff]'s termination that the June occurrences were, in part, the basis for the termination," and that Troy Mills improperly indicated during his deposition "that [the] defendant was not required to provide written notice of the June adverse employment actions" when the absences occurred.  Pl.'s Opp'n at 14.  But according to the defendant's Amended Policy, "warnings [are] issued to

---

[4] In his Statement of Material Facts in Dispute, the plaintiff summarily "denies" the defendant's statements in paragraph 15 of its Statement of Undisputed Material Facts.  Pl.'s Facts ¶ 15.  For this denial, the plaintiff cites to his own declaration submitted in support of his opposition, wherein he objects only to the fact that he allegedly "received notice from Troy Mills that [he] had earned occurrences in June 2009," and does not dispute his tardiness on these days.  Pl.'s Opp'n, Ex. A (Wright Decl.) ¶ 2.  And as previously noted, a non-moving party may not rely exclusively on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial."  Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted).

11

employees only for the second, fourth, sixth, and eighth occurrences." Def.'s Reply at 5; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 5 (Amended Policy) at 25; Def.'s Mot., Ex. 5 (Mills Depo.) at 131:31-32 (testifying that a supervisor "[does not] meet with a driver or any hourly employee after every occurrence"). The plaintiff "was not given a formal Employee Disciplinary Report, because he already had a written warning at his [sixth] occurrence on May 2, 2009, and [pursuant to] the Waste Management Attendance and Punctuality Policy, the next action is not until an [eighth] occurrence is reached." Def.'s Mot., Ex. 1 (Bieler Decl.) ¶ 8. Again, the plaintiff has failed to produce any evidence which shows that the defendant's reasons for issuing these occurrences are "phony," see Fischbach, 86 F.3d at 1183, or were otherwise connected in any way to the plaintiff's race, see, e.g., Chambliss, 2007 WL 581900, at *21. As "the Court can find no evidence that would lead a reasonable jury to question the good faith of [the defendant]'s determination or efforts," the Court must conclude that these allegations fail to establish pretext. See Wheeler, __ F. Supp. 2d at __, 2014 WL 2919014, at *7.

     Lastly, the plaintiff alleges that the defendant's decision to excuse his absence on March 9, 2009, "raise[s] legitimate questions about Mr. Smith's administration of [the] defendant's leave and disciplinary policies." Pl.'s Opp'n at 13-14. The plaintiff asks the Court to draw the inference that the decision to rescind the occurrences somehow demonstrates that their initial issuance relied upon "evidence that even [the] defendant's HR manager deemed not only inadequate, but suspicious." Id. at 14. But the Court finds baseless such an inference because the record lacks any factual basis to support these assertions. Under the attendance policy, the defendant issued two occurrences for each of the plaintiff's absences in March, Def.'s Facts ¶ 12; Pl.'s Facts ¶¶ 32-33, but in May 2009, the plaintiff submitted documentation indicating that his absences were related to a medical issue with his grandson, Def.'s Facts ¶ 12; Pl.'s Facts ¶ 38.

As a result of this documentation, Ms. Hightower recommended rescinding the plaintiff's two March occurrences. Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 10 (May 4, 2009-May 8, 2009 E-mail Correspondence). Management rescinded these occurrences. Def.'s Facts ¶¶ 13-14; Pl.'s Facts ¶ 40. The plaintiff offers no evidence to support the dubious inference he asks the Court to make, nor does he offer any evidence which suggests that the March 2009 occurrences were issued because of his race; therefore, the Court concludes that these allegations are also insufficient to establish pretext. See, e.g., Johnson v. Vilsack, 815 F. Supp. 2d 221, 232 (D.D.C. 2011) ("These assertions do not suffice to rebut defendant's legitimate, non-discriminatory explanation, not only because they are unsupported by the evidence, but also because they fail to assert that any action was taken based on plaintiff's [protected class].").

### 2. Allegations of Disparate Treatment

Alternatively, the plaintiff argues that the defendant's stated reason for his termination is pretextual because he "observed the attendance policy selectively enforced [for] the benefit of non-African-American drivers." Pl.'s Facts ¶ 29. Yet, the plaintiff has failed to offer any comparator evidence which demonstrates that the attendance policy was selectively enforced, as he contends. Indeed, the plaintiff has not identified any non-African-American employee—or any employee at all—who violated the attendance policy and was not terminated. Def.'s Facts ¶ 20; Def.'s Mot., Ex. 4 (Wright Depo.) at 66:13-20. And where, as here, the plaintiff fails to identify any similarly-situated comparators, "an inference of falsity or discrimination is not reasonable." Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008) (citation and internal quotation marks omitted).

Instead, the plaintiff relies exclusively on the statistic that "[w]ithin the two years after the closing of the Temple Hills facility 60% of African-American drivers who had transferred to

Gaithersburg had been terminated for cause or Reduction-in-Force." Pl.'s Facts ¶ 49; Pl.'s Opp'n, Ex. G (Employees Transferred from Temple Hills to Gaithersburg). While statistical evidence may be "relevant" in individual disparate treatment cases, "courts have consistently emphasized that the ultimate issue is the reasons for the <u>individual plaintiff's</u> treatment, not the relative treatment of different <u>groups</u> within the workplace." <u>Horvath v. Thompson</u>, 329 F. Supp. 2d 1, 10 (D.D.C. 2004) (citation and internal quotation marks omitted). Thus, such evidence is "ordinarily not dispositive," <u>id.</u> (citations and internal quotation marks omitted), and "absent a showing of their significance, [the] plaintiff's numbers are simply irrelevant," <u>id.</u> at 11 (citation omitted). The plaintiff's evidence "could be relevant to showing discrimination if it demonstrated a disparity" in the treatment of employees based on race, <u>see id.</u>, but fails to do so here because it lacks any comparisons to similarly-situated non-African Americans. Therefore, the Court has no way of determining whether this statistic is "disproportionately small to the pool, disproportionately large, or approximately statistically perfect." See <u>Whitacre v. Davey</u>, 890 F.2d 1168, 1172 (D.C. Cir. 1989).

      Accordingly, the plaintiff's claims of selective enforcement are unavailing because he has failed to offer any evidence to suggest that similarly-situated non-African-Americans were treated differently under the defendant's Amended Policy. <u>See, e.g.</u>, <u>McGill v. Munoz</u>, 203 F.3d 843, 848 (D.C. Cir. 2000) (the plaintiff did not demonstrate pretext when she failed to offer any "evidence that employees with similarly suspicious patterns of absenteeism were treated any differently than she was"). Moreover, the plaintiff's assertions of disparate treatment are further undercut by the fact that the defendant replaced the plaintiff by hiring Kenneth R. Eldridge, an African-American, Def.'s Facts ¶ 6; Def.'s Mot., Ex. 1 (Bieler Decl.) ¶ 12; Def.'s Mot., Ex. 2 (Mills Decl.) ¶ 12; Def.'s Mot., Ex. 3 (Smith Decl.) ¶ 12, because "a replacement within the

same protected class cuts strongly against any inference of discrimination," Brannum v. Fed. Nat'l Mortg. Ass'n, 971 F. Supp. 2d 120, 127 (D.D.C. 2013) (quoting Murray v. Gilmore, 406 F.3d 708, 715 (D.C Cir. 2005)).[5]

### IV.  CONCLUSION

The defendant in this matter has stated a legitimate, nondiscriminatory reason for the plaintiff's termination.  The plaintiff having failed to produce evidence sufficient to allow a reasonable jury to conclude that this proffered reason for his termination was a pretext designed to veil racial discrimination, the Court concludes that it must grant summary judgment for the defendant.

**SO ORDERED** this 9th day of January, 2015.[6]

                                                                REGGIE B. WALTON
                                                                United States District Judge

---

[5] The plaintiff argues that Mr. Eldridge did not "replace" the plaintiff, but rather was "one of several individuals hired after July 18, 2009." Pl.'s Facts ¶ 6.  But even if Mr. Eldridge did not replace the plaintiff, he was the first driver hired after the plaintiff was terminated, and "three of the four drivers hired in 2009 after [the plaintiff's] firing were [also] African[-]American."  Def.'s Reply at 8; Def.'s Mot., Ex. 1 (Bieler Decl.), Ex. 22 (Employees Hired at Gaithersburg Facility).

[6] An Order consistent with this Memorandum Opinion shall be issued contemporaneously.